## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| IP INNOVATION L.L.C. and<br>TECHNOLOGY LICENSING CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>RED HAT, INC. and<br>NOVELL, INC.<br><br>Defendants. | Case No. 2:07-cv-447 (RRR)<br><br>**Jury Trial Demanded** |

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND STRIKE
## THE EXPERT REPORT OF JOSEPH GEMINI

Defendants Red Hat, Inc. and Novell, Inc. seek to exclude the testimony and strike the expert report of Mr. Joseph Gemini (Docket No. 114). Mr. Gemini is Plaintiffs IP Innovation L.L.C. and Technology Licensing Corp.'s ("IPI") expert on reasonably royalty damages. This court GRANTS-IN-PART and DENIES-IN-PART the motion.

Under Rule 702 of the Federal Rules of Evidence, a court may permit opinion testimony from an expert only if such testimony "will assist the trier of fact" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The district courts act as gatekeepers tasked with the inquiry into whether expert testimony is "not only relevant, but reliable." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). This court must exclude testimony that does not meet the requirements of Rule 702.

In a suit for patent infringement, a successful plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (2006). The statute authorizes two categories of infringement compensation: lost profits and reasonably royalty damages. Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009). Because IPI does not manufacture or sell products incorporating the patents-in-suit, it has not sought, and is not entitled to, lost profits.

A reasonable royalty contemplates a hypothetical negotiation between the patentee and the infringer at a time before the infringement began. Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078 (Fed. Cir. 1983). Critically, the hypothetical negotiation presumes that the patentee is a willing licensor and the alleged infringer is a willing licensee, with both parties assuming the patent was valid, enforceable, and infringed. Georgia Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The Federal Circuit "requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture" in all damages calculations. Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1350 (Fed. Cir. 1999). Although some approximation is permitted in calculating the reasonable royalty, the Federal Circuit requires "sound economic and factual predicates" for that analysis. Riles v. Shell Exploration & Production Co., 298 F.3d 1302, 1311 (Fed. Cir. 2002) (citation omitted). Where, as here, such sound economic and factual predicates are absent from a reasonable royalty analysis, Rule 702 requires this court to exclude that unreliable proffered evidence.

A reliable reasonable royalty calculation depends on trustworthy evidence of both the royalty base and the royalty rate. Mr. Gemini invoked the "entire market value rule" in identifying the royalty base in this case. Under the entire market value rule, damages are recoverable only "if the patented apparatus was of such paramount importance that it substantially created the value of the component parts." Rite-Hite Corp. v. Kelley Co., Inc., 56

F.3d 1538, 1549 (Fed. Cir. 1995) (citation omitted). Therefore, "the patentee must prove that the patent-related feature is the basis for customer demand." Lucent Techs., 580 F.3d at 1336.

In this case, IPI has accused Red Hat's and Novell's Linux-based operating systems of infringing the patents-in-suit, including the Enterprise Linux Desktop and Server products. IPI alleges that the operating systems' multiple virtual workspaces and workspace switching features infringe the patents-in-suit. In invoking the "entire market value rule," Mr. Gemini included 100% of Red Hat's and Novell's total revenues from sales of subscriptions to the accused operating systems in his proposed royalty base. Mr. Gemini's methodology however does not show a sound economic connection between the claimed invention and this broad proffered royalty base.

The claimed invention is but one relatively small component of the accused operating systems. The evidence shows that the workspace switching feature represents only one of over a thousand components included in the accused products. Mr. Gemini relies on an online user forum for a third-party product to show that some users tout a desktop switching feature as essential. However, selected users' statements in isolation and without a relationship to the actual claimed technology do not show an accurate economic measurement of total market demand for the switching feature, let alone its contribution to the demand for the entire product asserted as the royalty base. The workspace switching feature's small role in the overall product is further confirmed when one considers the relative importance of certain other features such as security, interoperability, and virtualization. Moreover this proffered evidence has no economic foundation.

Contrary to the proffer of Mr. Gemini, the record—even at this pretrial stage after discovery—suggests that users do not buy the accused operating systems for their workspace switching feature. Most of Red Hat's and Novell's accused sales come from their Server products, the majority of which are not connected to a display and thus do not take advantage of the workspace switching feature. Mr. Gemini made no effort to factor out of his proffered royalty base these products which do not even feature the claimed invention. Once again, this

blatant oversight shows that Mr. Gemini did not use the type of reliable economic principles and methods required by Rule 702 for an economic damages expert. Also, the record shows that some accused operating systems are sold to the public with a default setting that does not enable the workspace switching feature. Mr. Gemini made no effort to factor out of his proffered royalty base those operating systems in which the user never affirmatively enables the claimed switching feature. In fact, he made no effort to even discern the percentage of users who would never enable or use the claimed feature. This aspect of his questionable methodology also shows inattention to the economic and factual data necessary for a reliable assessment of a compensatory royalty. Overall, Mr. Gemini never accounts for the record evidence that most users of the accused operating systems do not seem to use the workspace switching feature at all. Accordingly, the record cannot support the unfounded conclusion that the often-unused feature drives demand for a royalty base of 100% of the operating systems as a whole. In sum, this stunning methodological oversight makes it very difficult for this court to give any credibility to Mr. Gemini's assertion that the claimed feature is the "basis for customer demand." See Lucent Techs., 580 F.3d at 1336.

IPI tries to shift the burden to Red Hat and Novell, complaining that they did not provide sufficient information for Mr. Gemini to determine the value of the desktop switching feature relative to other features of the accused products. IPI argues that the defendants' desktop switching feature has no separate valuation, no aftermarket, and thus no way to value the accused feature separately. This court, however, must insist under the law that IPI, not Red Hat or Novell, has the burden of proving damages by a preponderance of evidence. Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370, 1381 (Fed. Cir. 2003). IPI cannot blame the defendants for Mr. Gemini's assertion of 100% of the revenue as royalty base. IPI must show some plausible economic connection between the invented feature and the accused operating systems before using the market value of the entire product as the royalty base.

Another reason for excluding Mr. Gemini's expert testimony is that he arbitrarily picked a royalty rate that is much higher than the existing royalty rates for licenses to the patents-in-suit.

4

As a "starting point" for determining the royalty rate, Mr. Gemini used a 2004 publication titled "Licensing Economics Review" ("LER") by AUE Consultants and a 2004 study by Navigant Consulting. LER indicated that the average royalty rate for the Software industry was 11.6% of revenues with a median of 7.5 % of revenues. Navigant Consulting's study indicated that for Computer and Electronic Products Manufacturing industry, royalty rates were at a high of 40.0%, a low of 1.0%, a mean of 10.2%, and median of 6.0% of revenues. However, "software industry" and "computer and electronic products manufacturing industry" encompass much more than the desktop switching feature at issue in this case. Mr. Gemini offers no evidence that the alleged industry agreements are in any way comparable to the patents-in-suit. See Resqnet.com, Inc. v. Lansa, Inc., Case Nos. 2008-1365, -1366, 2009-1030, slip. op. at 14-16 (Fed. Cir. Feb. 5, 2010) (discrediting license agreements because "none of these licenses even mentioned the patents in suit or showed any other discernible link to the claimed technology").

Instead of relying on these studies, Mr. Gemini should have at least inaugurated his analysis with reference to the existing licenses to the patents-in-suit. See Georgia-Pacific, 318 F. Supp. at 1120 (considering past and present royalties received by the patentee "for the licensing of the patent-in-suit, proving or tending to prove an established royalty"). "An established royalty is usually the best measure of a 'reasonable' royalty for a given use of an invention because it removes the need to guess at the terms to which parties would hypothetically agree." Monsanto Co. v. McFarling, 488 F.3d 973, 978-79 (Fed. Cir. 2007) (citation omitted). The previous owner of the patents-in-suit, Xerox Corporation, entered into several license agreements that involved one or more of the patents-in-suit. At least two of these agreements were entered into outside of the context of litigation and thus appropriate as touchstones for determining the appropriate royalty rate in this case. Mr. Gemini disregarded these licenses because Xerox entered into these agreements in the mid-1990's, a decade before the alleged hypothetical negotiation date. However, these licenses are far more relevant than the general market studies on which Mr. Gemini primarily relied in his expert report. A credible economic approach might

5

have tried to account for the passage of time since the 1990's agreements on the patents in this case, rather than reject them out of hand.

Accordingly, Mr. Gemini's current expert report improperly inflates both the royalty base and the royalty rate by relying on irrelevant or unreliable evidence and by failing to account for the economic realities of this claimed component as part of a larger system. This court hereby precludes Mr. Gemini from testifying at the trial of this case or otherwise presenting his opinions on the issue of damages based on his current expert report. Given the lack of evidence in the record relating to damages, this court will entertain appropriate motions to repair and prepare a record suitable for trial on the issue of damages. This court will entertain appropriate motions and responses on the topic of damages. The parties are reminded that expert testimony on the topic of damages will not be allowed absent a firm basis in accepted economic principles with an eye to the facts of this record.

It is SO ORDERED.

SIGNED this 2nd day of March, 2010.

_____
RANDALL R. RADER
UNITED STATES CIRCUIT JUDGE