IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

IP INNOVATION L.L.C. and
TECHNOLOGY LICENSING CORP.,

Plaintiffs,

v.

RED HAT, INC. and
NOVELL, INC.,

Defendants.

Case No. 2:07-cv-447 (RRR)

**Jury Trial Demanded**

## ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON INFRINGEMENT AND VALIDITY OR IN THE ALTERNATIVE FOR A NEW TRIAL

IP Innovation L.L.C. and Technology Licensing Corporation (collectively, "Plaintiffs") move for judgment as a matter of law on infringement and validity, or in the alternative, for a new trial. (Document No. 248.) Because substantial evidence supports the jury verdict of noninfringement and invalidity, this court DENIES the motion.

I

Plaintiffs own by assignment U.S. Patent Nos. 5,072,412 ("'412 patent"), 5,394,521 ("'521 patent"), and 5,533,183 ("'183 patent"). These related patents, based on the same specification, each carry the title "User Interface with Multiple Workspaces for Sharing Display System Objects." All patents name three inventors: Dr. D. Austin Henderson, Jr.; Dr. Stuart K. Card; and Mr. John T. Maxwell, III.

The patents relate to a graphical user interface that spans across multiple workspaces. A "workspace" is a "display system entity that includes a collection of display objects together with spatial display relations between them." Document No. 87 at 23 ("Claim Construction Order"); *see also* '412 patent col.8 ll.46-49. A "display object" is a "visually distinguishable display feature or set of features which is coherent, in the sense of sticking together in a display." Claim Construction Order at 23; *see also* '412 patent col.7 ll.25-27. Pointers, icons, windows, and menus are examples of display objects. '412 patent col.1 ll.38-63, col.7 ll.28-39. A "display system object provides the visible features of each of the display objects." *Id.* col.8 ll.21-28. A display system object can be linked to multiple display objects that appear in different workspaces and "receive[] and respond[] to user signals relating to those display objects." *Id.*; *see also id.* col.5 ll.10-13.

Figures 1A and 1B illustrate "a number of general features of the present invention, including switching from the display of one workspace to another." *Id.* col.9 ll.36-38.



**FIG. 1A**          **FIG. 1B**

*Id.* figs. 1A, 1B. The first workspace (10) has a window for a text editing application (12), a window for a graphics application (14), and a door icon (16). *Id.* col.9 ll.52-58. A user can click on the door icon to switch from the first workspace to the second workspace (20). *Id.* col.10 ll.2-

5.  The second workspace has a window for a text editing application (22), a window for another graphics application (24), and a back door icon (26).  *Id.* col.10 ll.6-9, 14-17.  The user can click on the back door icon to return to the first workspace.  *Id.* col.10 ll.15-17.

The same display system object calls a text editing application to provide windows (12) and (22).  *Id.* col.10 ll.9-11.  The workspaces display the windows at different locations and with different dimensions, as can be seen from the cutting off of the character "d" in window (22).  *Id.* col.10 ll.11-14.  However, "the state of the underlying display system object will be continuous." *Id.* col.10 ll.25-27.  In other words, if the user edits the contents of window (12) and clicks on the door icon (16) to switch to the second workspace, the changes will be reflected in window (22). *Id.* col.10 ll.23-25.  Windows (12) and (22) "illustrate the phenomenon of object constancy, under which two successively displayed objects are perceived as the same object."  *Id.* col.10 ll.30-32.

Plaintiffs allege that Red Hat, Inc. and Novell, Inc. (collectively, "Defendants") infringe: claims 1 and 21 of the '412 patent; claim 8 of the '521 patent; and claim 1 of the '183 patent. The claims cover a particular technique for switching between two workspaces.  Claim 1 of the '412 patent is representative and recites:

A system comprising:

a display;

first and second workspace data structures relating respectively to first and second workspaces that can be presented on the display;
each of the first and second workspaces including a respective set of display objects;
each of the display objects being perceptible as a distinct, coherent set of display features;
the display objects of each respective set being perceptible as having spatial positions relative to each other when the respective workspace is presented on the display;

3

*display object means* for generating *first and second display objects*;
  the first workspace data structure being linked to the display object means
  so that the first display object is in the respective set of display objects of
  the first workspace;
  the second workspace data structure being linked to the display object
  means so that the second display object is in the respective set of display
  objects of the second workspace; and

control means for accessing the first workspace data structure to cause the display
to present the first workspace including the first display object;
  the control means further being for accessing the second workspace data
  structure to cause the display to present the second workspace including
  the second display object;
  the display object means generating the first and second display objects so
  that *the second display object is perceptible as the same tool as the first
  display object* when the second workspace is presented after the first
  workspace.

*Id.* col.45 ll.34-66 (emphases added).

Plaintiffs accuse the following software products of infringement: Red Hat Enterprise

Linux versions 4 and 5 ("RHEL"); Red Hat's Fedora versions 7, 8, and 9; Novell SUSE Linux

Enterprise versions 10, 10 SP1, and 10 SP2; and Novell openSUSE versions 10.2, 10.3, and 11.

The accused products support multiple workspaces and allow users to switch among these

workspaces.

II

On September 9, 2007, Plaintiffs filed this action against Defendants alleging

infringement of the '412, '521, and '183 patents.  Defendants answered the complaint on

February 1, 2008, and asserted defenses and counterclaims of noninfringement and invalidity.

On August 10, 2009, District Judge Leonard Davis issued a claim construction order.  On

December 22, 2009, District Judge Davis transferred the case to Circuit Judge Randall R. Rader,

sitting in the United States District Court for the Eastern District of Texas by designation.  This

court denied Defendant's motion for summary judgment of invalidity for improper inventorship

4

under 35 U.S.C. § 116 after finding a genuine issue of material fact.  This court held a jury trial from April 26, 2010, to April 30, 2010.  On April 30, 2010, the jury returned a unanimous verdict in favor of Defendants and against Plaintiffs.  The jury found that Defendants did not infringe any of the asserted claims and that the asserted claims were invalid as anticipated and due to improper inventorship.  On May 14, 2010, Plaintiffs filed a motion for judgment as a matter of law ("JMOL") on infringement and validity.  Plaintiffs later renewed its JMOL motion and moved for a new trial.  Defendants oppose the motion.

III

JMOL is appropriate only if this court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  This court "draw[s] all reasonable inferences and resolve[s] all credibility determinations in the light most favorable to the nonmoving party."  *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 481 (5th Cir. 2008) (internal quotation marks and citation omitted).  This court should grant a JMOL motion "only if the facts and inferences point so strongly and overwhelmingly in favor of [the movant] that the [c]ourt believes that [a] reasonable [jury] could not arrive at a contrary verdict."  *McBeth v. Carpenter*, 565 F.3d 171, 176 (5th Cir. 2009) (citation omitted).  "A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict."  *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004).

This court grants a motion for a new trial only if "the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence."  *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838-39 (5th Cir. 2004).

IV

To prove infringement, a patentee must show that each and every element of the claimed invention is present in the accused device by a preponderance of the evidence. *Amgen Inc. v. F. Hoffmann-La Roche, Ltd.*, 580 F.3d 1340, 1374 (Fed. Cir. 2009).  Plaintiffs contend that the jury erred by finding noninfringement because the accused products display infringing trash icons and infringing calendar windows across multiple workspaces.

Substantial evidence supports the jury's verdict that the trash icons do not infringe the asserted claims because they do not meet the "first and second display objects" limitation.  A trash icon has a visually distinguishable display feature and thus is a display object.  The accused products display a trash icon in each workspace.  However, as Mr. Stephen Gray, Defendants' noninfringement expert, testified, a trash icon is "a single display object that shows in each of the workspaces." (Gray, 4/29/10 AM 131:21-132:19; Gray, 4/29/10 PM 14:19-15:10.)  A trash icon that appears in one workspace and a trash icon that appears in another workspace are not two separate display objects.  Instead, the same trash icon is visible across multiple workspaces.  Therefore, the trash icons cannot infringe the asserted claims, which require the "first and second display objects."

Plaintiffs misconstrue this court's previous description of the patented invention to argue that a single display object that appears across multiple workspaces can infringe the asserted claims.  Multiple workspaces can have display objects that are generated by the same display system object and these display objects may be "perceptible as the same tool."  However, the asserted claims are clear that a display object shown in one workspace and a similarly-looking display object shown in another workspace must be two separate display objects for infringement to occur.  Plaintiffs' infringement expert, Dr. Myron Zimmerman, conceded that a single display

object cannot infringe the asserted claims.  (Zimmerman, 4/27/10 PM, 26:16-19.)  Accordingly, Plaintiffs have not shown that no reasonable jury could have found that the trash icons are not infringing.

It is unclear as to why Plaintiffs believe that the calendar windows in the accused products meet each and every element of the asserted claims.  In their JMOL motion, Plaintiffs merely summarize Dr. Zimmerman's expert testimony and do not explain why the calendar windows infringe.  As Dr. Zimmerman testified, a user can open calendar windows in two different workspaces, and those calendar windows might be perceived to be the same tool.  (Zimmerman, 4/27/10 PM 34:12-21.)  The user can carry over content from one calendar window to another under some circumstances.  (*Id.*; Gray, 4/29/10 PM 15:11-17.)  Also, unlike trash icons, two calendar windows in two different workspaces are separate display objects and thus meet the "first and second display objects" limitation.  However, the asserted claims require more than the capabilities listed in Plaintiffs' JMOL motion.  Plaintiffs do not discuss any other claim elements in their briefs.  Therefore, this court is not persuaded that JMOL of infringement is appropriate.

V

"To prove inducement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  *I4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010).  As noted, substantial evidence supports the jury's verdict that the accused products do not infringe the asserted claims.  Accordingly, it follows that substantial evidence supports the jury's verdict of no infringement by inducement.

7

VI

A patent is invalid as anticipated if "the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). The anticipation inquiry proceeds on a claim-by-claim basis. *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 974 (Fed. Cir. 2010). "Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1339 (Fed. Cir. 2010) (citation omitted). At trial, the jury returned a general verdict of anticipation. Plaintiffs claim that none of the three devices presented at trial anticipate the asserted claims.

Substantial evidence supports the jury's verdict that the "Chan system" anticipated the asserted claims. Patrick Chan, a master's student at the University of Waterloo, created a system of virtual workspaces known as "The Room Model." (Def. Exh. 535.) The Chan system used a collection of rooms, where each room had a group of icons including a door icon. '412 patent col.3 ll.61-64. A user could click on the door icon to go to a different room. *Id.*; (Wilson 4/29/10 PM 73:25-74:12.). Plaintiffs do not dispute in their JMOL motion that the Chan system meets each and every element of the asserted claims. Plaintiffs instead raise two procedural issues.

First, Plaintiffs argue that the "Chan system" cannot anticipate the asserted claims because it was a "blending of two separate articles by different authors." Dr. David Wilson, Defendants' invalidity expert, relied on two separate references to describe the Chan system. He used a republication of Chan's master's thesis entitled "Learning Considerations in User Interface Design: The Room Model." (Def. Exh. 535.) Dr. Wilson also used another paper entitled "Experience Designing the Waterloo Port User Interface" by Professor Michael A.

Malcolm, Chan's supervisor at the University of Waterloo, and Professor Doug Dyment, one of Chan's thesis readers. (Def. Exh. 601.) Dr. Wilson explained that the illustrated figures and technical details showed that the two papers described the same Chan system. (Wilson, 4/29/10 PM 75:8-76:2.) Therefore, he used the information in both papers to recreate the Chan system. (Wilson, 4/29/10 PM 77:21-78:4.)

"[A]nticipation must be found in a single reference, device, or process." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 726-27 (Fed. Cir. 1984). Dr. Wilson used a single device, the Chan system, to show anticipation. Dr. Wilson did not rely on the articles as separate anticipatory references. He only used the articles to understand how the Chan system functioned. This court sees no error in using multiple references to describe a single prior art system for the purpose of showing anticipation.

Second, Plaintiffs argue that Defendants never proved that the Chan system existed prior to the section 102(b) bar date—March 25, 1986. However, papers that Defendants relied upon at trial separately and individually establish that the Chan system was in public use prior to March 25, 1986. Chan's thesis was published in July 1984, and his professors' paper was published in 1983. Chan's thesis explains that his system was "used in a fourth year undergraduate course" and "approximately 100 students have been exposed to the system over the course of 8 months." (Def. Exh. 535.) Therefore, the papers indicate that the Chan system existed and was in public use at least by 1984. Accordingly, Defendants properly used the Chan system as a single anticipatory prior art system that was in use before the section 102(b) bar date.

## VII

Because this court finds that substantial evidence supports the jury's verdict of noninfringement and invalidity, this court denies Plaintiff's JMOL motion on infringement and

validity.  Also, because the jury verdict is not against the great weight of the evidence, this court denies Plaintiffs' motion for a new trial.

It is SO ORDERED.

SIGNED this 13th day of October 2010.


_Randall R. Rader_

_____

RANDALL R. RADER
UNITED STATES CIRCUIT JUDGE
(sitting by designation)